# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

AGUSTIN MORALES-ROJAS,          :
      Plaintiff,             :    CIVIL ACTION NO.
                               :    3:17cv1434(MPS)
      v.                    :
                               :
DR. RICARDO RUIZ, ET AL.,        :
      Defendants.          :

## __INITIAL REVIEW ORDER__

The plaintiff, Agustin Morales-Rojas, is currently incarcerated at Cheshire Correctional

Institution ("Cheshire"). He has filed a civil rights complaint against Dr. Ricardo Ruiz and Dr.

Samuel Berkowitz.

## I. **Legal Standard**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.* This requirement applies both

where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr

v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Factual Allegations

Prior to his incarceration, the plaintiff was involved in a shooting. *See* Compl., ECF No. 1, ¶ 8. He sustained gunshot wounds to his left foot and knee and the left side of his back and neck. These injuries required multiple surgeries. *See id.* ¶¶ 8-9. One surgical procedure involved the placement of a metal rod in the plaintiff's left leg and another surgery involved the amputation of the fourth and fifth toes on his left foot. *See id.* ¶ 9. There are pellets from the bullets still lodged in the plaintiff's left foot and leg. *See id.* Because of the amputation of the toes on his left foot, his personal physician arranged to have customized shoes made to fit his feet. *See id.* ¶ 10.

At some point prior to May 2009, the State of Connecticut Department of Correction took custody of the plaintiff. *See id.* ¶¶ 11-13. Upon his admission to the Department of Correction, the plaintiff complained of pain and discomfort in his left foot, leg, and back. *See id.* ¶ 12. The plaintiff believed that the pain was due to lack of adequate footwear. *See id.*

On May 11, 2009, at Garner Correctional Institution, Podiatrist Berkowitz provided the

plaintiff with a size 10 orthopedic shoe. *See id.* ¶ 13 & Ex. A. The plaintiff's medical records reflect that the plaintiff felt the shoes fit him well. *See id.* & Ex. B.

At some later point in 2009, the plaintiff underwent surgery on the third toe on his left foot. *See id.* ¶ 14. Despite the plaintiff's initial opinion regarding the fit of the orthopedic shoes, he claims that the shoes provided him with little to no relief of his pain during the two years after he received the shoes. *See id.* ¶ 15.

In 2012, prison officials transferred the plaintiff to Corrigan Correctional Institution. *See id.* ¶ 16. During his transfer, prison officials confiscated his orthopedic shoes. *See id.* On July 9, 2012, the plaintiff met with Podiatrist Fedus in an effort to facilitate the return of his orthopedic shoes. *See id.* ¶ 17 & Ex. C. The record from this visit reflects that Dr. Fedus noted calluses on the plaintiff's feet. *See id.* Dr. Fedus did not think that it was medically necessary to provide the plaintiff with special sneakers and informed the plaintiff that the quality and comfort of a sneaker did not constitute a medical need. *See id.*

At some point in 2016, prison officials transferred the plaintiff to Cheshire. *See id.* ¶ 18. The plaintiff complained about pain in his left foot due to calluses that had formed because his shoe did not fit properly. *See id.* ¶ 19. On July 1, 2016, the plaintiff met with Dr. Ruiz. *See id.* ¶ 20. He discussed his severely painful and disfigured foot and what he believed to be the source of his pain, inadequate footwear. *See id.* He asked Dr. Ruiz to formulate a treatment plan for his condition. *See id.* ¶ 22. The plaintiff requested to be sent to a foot specialist and that he be provided with shoes that fit his disfigured foot. *See id.* ¶ 23. Dr. Ruiz failed to provide any relief for the plaintiff's foot pain. *See id.* ¶ 24. The plaintiff subsequently submitted several inmate requests seeking treatment for his foot pain. *See id.* ¶ 25.

On November 3, 2016, Dr. Ruiz submitted a request to the Utilization Review Committee ("URC") seeking approval for the plaintiff to be seen by a podiatrist.  *See id.* ¶ 26 & Ex. D.

The URC approved the request and Dr. Berkowitz examined the plaintiff on December 5, 2016.  *See id.* ¶ 27.  The plaintiff claims that Dr. Berkowitz failed to diagnose or treat the underlying cause of his foot pain.  *See id.* ¶ 30.  Dr. Berkowitz opined that the plaintiff's present shoes were too small and that if he sized the plaintiff's feet correctly they would be a size 12.  *See id.* ¶¶ 31, 33 & Ex. E.   The plaintiff informed Dr. Berkowitz that he had always worn a size 10 shoe and that Dr. Berkowitz had in fact provided him with size 10 custom orthopedic shoes in 2009.  *See id.* ¶ 32.

The plaintiff requested customized orthopedic shoes to fit his disfigured left foot or a custom-made orthopedic device to insert into his shoe or to be permitted to buy better quality shoes from an outside vendor.  *See id.* ¶ 35.  Dr. Berkowitz did not agree to any of the options requested by the plaintiff and informed the plaintiff that if he wore size 12 shoes, his toes would not be injured by his shoes.  *See id.* ¶¶ 31, 36 & Ex. E.   Dr. Berkowitz further noted that no additional visits with the plaintiff would be necessary.  *See id.* Ex. E.

In June 2017, the plaintiff fell in the outside recreation yard.  *See id.* ¶ 39.   He claims that he lost his balance because his footwear did not fit him properly.  *See id.* ¶¶ 39, 41.  Medical staff moved the plaintiff from the recreation yard to the medical unit in a wheelchair because it was too painful for the plaintiff to stand and walk.  *See id.* ¶ 39.

Dr. Ruiz examined the plaintiff.  *See id.* ¶41.  The plaintiff claimed that he was in severe pain.  *See id.*  The plaintiff stated that he thought he had broken a bone, but Dr. Ruiz refused to send him to the hospital for x-rays or treatment.  *See id.* ¶ 42.  Instead, Dr. Ruiz prescribed

Ibuprofen for the pain, provided the plaintiff with a crutch and sent the plaintiff back to his housing unit. *See id.*

Four days later, the plaintiff underwent an x-ray of his left foot. *See id.* ¶ 43. That night the plaintiff was unable to sleep because of the pain in his left foot. *See id.* ¶ 44. Two days later, the plaintiff went to the medical department, and a nurse provided him with Ibuprofen and the plaintiff waited to see Dr. Ruiz. *See id.* ¶ 47.

Dr. Ruiz looked at the x-rays and discovered that the plaintiff had broken a bone in his foot. *See id.* ¶ 48. The plaintiff sought to be sent to a hospital for treatment. *See id.* ¶ 49. Dr. Ruiz gave the plaintiff an open-toed shoe and Ibuprofen and directed the plaintiff to return to his housing unit. *See id.* ¶ 50.

The plaintiff submitted inmate requests and grievances complaining of foot pain. *See id.* ¶ 55. Medical staff have taken no further action to make sure that his broken bone heals properly. *See id.*

### III. Discussion

#### A. Section 1983 - Official Capacity Claims – Money Damages

For relief, the plaintiff seeks monetary damages as well as declaratory and injunctive relief. To the extent that he seeks monetary damages from the defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). All claims for monetary damages against the defendants in their official capacities

are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B.  Section 1983 - Individual Capacity Claims for Monetary Damages and Official Capacity Claims for Injunctive and Declaratory Relief

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  There is a subjective and an objective component to the deliberate indifference standard.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Objectively, an inmate must allege that the deprivation of medical care was "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)(citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)(internal quotation marks and citations omitted).  The Second Circuit has identified several factors that are relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Subjectively, an inmate must allege that the defendant prison official "act[ed] with a sufficiently culpable state of mind."  *Id.* (internal quotation marks and citation omitted).  Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk.  *See*

*Salahuddin*, 467 F.3d at 279-80. The fact that a prison official did not alleviate a significant risk that he should have perceived but did not does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

The plaintiff alleges that he has suffered from a serious foot condition as a result of gunshot wounds since at least 2009, and in June 2017, he broke a bone in his foot which has not healed properly. He claims that he experiences severe pain in his left foot every day because he does not have the proper footwear and the broken bone has not healed properly. Dr. Ruiz has failed to adequately treat the plaintiff's painful foot condition, failed to timely refer the plaintiff for treatment of his painful foot condition, and failed to provide the plaintiff with timely or appropriate treatment for the broken bone in his foot.

Dr. Berkowitz has failed to prescribe orthopedic shoes or inserts or other treatment to alleviate the pain and discomfort in the plaintiff's disfigured left foot. The plaintiff contends that in 2016, Dr. Berkowitz refused to prescribe the same or similar orthopedic shoes that he concluded were medically necessary and had prescribed in 2009 because of monetary concerns. Thus, the plaintiff alleges that the decision not to prescribe medically necessary footwear or inserts was made on the basis of monetary reasons and not on the basis of medical judgment. The plaintiff seeks monetary damages, declaratory relief and injunctive relief in the form of medical treatment, and an evaluation of his conditions for violations of his Eighth Amendment rights.

The court concludes that the plaintiff has stated a plausible Eighth Amendment claims of deliberate indifference to medical needs against Drs. Ruiz and Berkowitz. Those claims will proceed against the defendants in their individual and, to the extent they seek prospective relief,

official capacities.

### C. State Law Negligence Claim

The plaintiff alleges that Dr. Ruiz was negligent in diagnosing and treating the broken bone that he suffered when he slipped and fell in the recreation yard in June 2017. The plaintiff seeks monetary damages and injunctive relief. The request for declaratory relief is directed only to the plaintiff's Eighth Amendment claim.

With respect to the plaintiff's negligence claim against Dr. Ruiz in his individual capacity for monetary damages, Connecticut law provides, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4–165. Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Miller v. Egan*, 265 Conn. 301, 378-79 (2003). Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Id.* at 319. Furthermore, "[a]ny person having a complaint for such damage or injury" must "present ... [the] claim against the state" to the State Claims Commissioner who may authorize an action against the state or a state official. Conn. Gen. Stat. §§ 4-160(a), 4-165(a). When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted." Conn. Gen. Stat. § 4-160(c).

The plaintiff has not asserted that he filed a claim with the Connecticut Claims Commissioner or that he received the required authorization to file suit against the State and its officials. Accordingly, the negligence claim against Dr. Ruiz in his individual capacity for

monetary damages is barred by statutory immunity under Conn. Gen. Stat. § 4-165 and is dismissed. *See* 28 U.S.C. § 1915A(b)(2).

With respect to the plaintiff's negligence claim against Dr. Ruiz in his official capacity, he seeks monetary damages and injunctive relief. "The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty." *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, *cert. denied*, 259 Conn. 929, 793 A.2d 253 (2002). This immunity is applicable to both lawsuits seeking monetary damages against a state as well as to lawsuits seeking monetary damages against a state official in his or her official capacity. *See Miller*, 265 Conn. at 313 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citation omitted). There is no allegation that Dr. Ruiz in his official capacity waived his sovereign immunity to be sued as to any negligence claims for monetary damages. Accordingly, the negligence claim against Dr. Ruiz in his official capacity for monetary damages is dismissed as barred by sovereign immunity. *See* 28 U.S.C. § 1915A(b)(2).

There are three exceptions to the doctrine of sovereign immunity for claims asserted against state officers in their official capacities for injunctive or declaratory relief.

> "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority."

*Columbia Air Servs., Inc. v. Dep't of Transp.*, 293 Conn. 342, 349, 977 A.2d 636, 643 (2009) (internal quotation marks and citations omitted).

The plaintiff claims that Dr. Ruiz was negligent in diagnosing and treating his broken foot and seeks injunctive relief in the form of medical treatment and an evaluation of the condition of his left foot. The plaintiff does not allege that Dr. Ruiz violated the Connecticut Constitution or acted in excess of his statutory authority. The nature of the plaintiff's allegations are clearly based on and arise from actions or omissions of Dr. Ruiz in his capacity as a physician for the Department of Correction at Cheshire. Thus, the court concludes that the exception to the doctrine of sovereign immunity is not applicable to the claim for injunctive relief related to the negligent conduct of Dr. Ruiz. The request for injunctive relief, to the extent that it is asserted against Dr. Ruiz, for his allegedly negligent conduct is dismissed. *See* 28 U.S.C. § 1915A(b)(2). Thus, the state law claim for negligence has been dismissed in all respects.

### ORDERS

**In accordance with the foregoing analysis, the court enters the following orders:**

**(1)** The section 1983 claims for monetary damages against both defendants in their official capacities and the state law negligence claims against both defendants in their individual and official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment deliberate indifference to medical needs claims will proceed against Dr. Ruiz and Dr. Berkowitz in their individual and official capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on the defendants in their official capacities by delivering the necessary documents in person to the

Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

**(3)** Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Dr. Ricardo Ruiz and Dr. Samuel Berkowitz and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(4)** Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(7)** The Pro Se Prisoner Litigation Office shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal

Affairs Unit.

SO ORDERED at Hartford, Connecticut this _____12th___ day of _January_____, 201<u>8</u>.

_____/s/_____
Michael P. Shea
United States District Judge