UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AGUSTIN MORALES-ROJAS,     :
     Plaintiff,         :
                    :
     v.                :     Case No. 3:17cv1434(MPS)
                    :
DR. RICARDO RUIZ, ET AL.,     :
     Defendants.      :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Agustin Morales-Rojas, is currently incarcerated at Cheshire Correctional

Institution, in Cheshire, Connecticut.  He initiated this action by filing a complaint *pro se*

pursuant to 42 U.S.C. § 1983 against Drs. Ricardo Ruiz and Samuel Berkowitz.

On January 12, 2018, after reviewing the complaint, I concluded that the plaintiff had

stated plausible claims of deliberate indifference to his alleged need for orthopedic shoes or

inserts or other treatment to alleviate pain and discomfort in his left foot against Drs. Ruiz and

Berkowitz and a plausible claim of deliberate indifference to his ankle injury against Dr. Ruiz.

*See* Initial Review Order, ECF No. 7.  I allowed those Eighth Amendment claims to proceed

against Drs. Ruiz and Berkowitz in their individual and official capacities.

On March 8, 2018, the defendants filed an answer to the complaint.  On August 10, 2018,

the defendants moved for summary judgment.  On January 16, 2019, the plaintiff filed his

opposition to the motion.  For the reasons set forth below, the motion for summary judgment will

be granted.

## I.    Standard of Review

The party moving for summary judgment bears the burden of demonstrating "that there is

no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks and citations omitted).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a

material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.    <u>Facts</u>[1]

The plaintiff's medical records reflect that he has been confined in a State of Connecticut Department of Correction facility since at least July 2008. Defs.' L.R. 56(a)1, Ex. B (Medical Records), ECF No. 18 at 40.[2] Prior to his incarceration, the plaintiff was the victim of gunshot wounds to his left foot and knee and the left side of his back and neck. Defs.' L.R. 56(a)1 ¶ 2; Compl., ECF No. 1 at 2-3 ¶ 8. The injuries sustained by the plaintiff required the amputation of the fourth and fifth toes on his left foot. Defs.' L.R. 56(a)1 ¶ 3.

On December 17, 2008, Dr. Berkowitz examined the plaintiff's left foot due to his complaints of painful corns. *Id.* ¶ 4. Dr. Berkowitz diagnosed the plaintiff's corn as having been caused by a hammer toe deformity in the third toe of his left foot. *Id.* ¶ 5. A hammer toe deformity is the abnormal bending of the middle joint of the toe. Pl.'s L.R. 56(a)2 ¶ 4.

It was Dr. Berkowitz's opinion that orthopedic shoes could alleviate the pain caused by the corn on the plaintiff's third toe. Defs.' L.R. 56(a)1 ¶ 6. On December 18, 2008, Dr. Berkowitz submitted a request to the Utilization Review Committee ("URC") to approve orthopedic shoes for the plaintiff. *Id.* ¶ 7. On January 14, 2009, Dr. Berkowitz informed the

---

[1] The relevant facts are taken from the defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1"), [ECF No. 16-2], the Exhibits, [ECF Nos. 16-3, 16-4, 17, 18], filed in support of the Local Rule 56(a)1 Statement, the plaintiff's Local Rule 56(a)2 Statement (Pl.'s L.R. 56(a)1"), [ECF No. 24-2], and the plaintiff's Declaration, [ECF No. 24-3].

[2] The State of Connecticut Department of Correction's website reflects that the plaintiff's latest date of admission to the Department of Correction was July 18, 2005, and that a judge sentenced him to forty-two years of imprisonment on July 23, 2007. This information is available at: http://portal.ct.gov/DOC under Inmate Information Search using the plaintiff's CT

plaintiff that the URC had approved the request for orthopedic shoes. *Id.* ¶ 8. After asking the plaintiff his shoe size and being told he was a size 10, Dr. Berkowitz ordered a size ten orthopedic shoe for the plaintiff. Ex. C (Affidavit of Samuel Berkowitz), ECF No. 16-3 ¶¶ 12-14. On April 22, 2009, the plaintiff informed Dr. Berkowitz that he was still experiencing pain due to corns and had not received the orthopedic shoes. Ex. C ¶ 15. On May 11, 2009, a medical staff member delivered the orthopedic shoes to the plaintiff. *Id.* ¶ 16.

On August 26, 2009, Dr. Berkowitz met with the plaintiff and the plaintiff explained that he had thrown out the orthopedic shoes because they had broken. *Id.* ¶ 17. Dr. Berkowitz noted that the plaintiff still suffered from a painful corn due to the hammer toe deformity. *Id.* Later that day, Dr. Berkowitz submitted a request to the URC to perform a procedure to correct the hammer toe deformity. Defs.' L.R. 56(a)1 ¶ 11.

On September 1, 2009, the URC approved the request. Ex. B (Medical Records), ECF No. 18 at 110. On February 24, 2010, Dr. Berkowitz performed surgery to correct the plaintiff's hammer toe deformity of the third toe of his left foot. Defs.' L.R. 56(a)1 ¶ 12; Ex. B at 111-14.

On June 8, 2012, prison officials transferred the plaintiff from Cheshire to Corrigan Correctional Institution. Ex. A (Medical Records), ECF No. 17 at 87. On July 9, 2012, Dr. Fedus, a podiatrist, evaluated the plaintiff due to his complaints of callouses on his right foot and on his left foot. Defs.' L.R. 56(a)1 ¶ 13; Ex. A at 101. Dr. Fedus noted that the plaintiff's gait was normal, there was no abnormal wear on the plaintiff's sneakers, he had no fourth or fifth toes on his left foot due to amputation, and he had callouses on the bottoms of some of the toes on both feet. Ex. A at 101. He treated the callouses by manual debridement. *Id.* Based on his

DOC Inmate Number, 332696 (last visited Feb. 26, 2018).

examination, Dr. Fedus did not see a medical need for special sneakers, noting that quality and comfort were not a medical need. *Id.*

At some point between May 19, 2016 and June 2, 2016, prison officials at Corrigan transferred the plaintiff back to Cheshire. *Id.* at 48-53. On July 1, 2016, Dr. Ruiz evaluated the plaintiff due to his complaints of lumbar back pain and callouses on his feet. Defs.' L.R. 56(a)1 ¶¶ 16-18. Dr. Ruiz ordered an x-ray of the plaintiff's back, prescribed a medication to alleviate the plaintiff's pain, issued him a bottom bunk pass for a year, and recommended that he tie his shoes correctly and refrain from engaging in sports. *Id.* ¶¶ 18, 20; Ex. D ¶¶ 7-10; Ex. A at 8, 47.

On September 1, 2016, Dr. Ruiz examined the plaintiff due to his complaints of back pain and a potential allergy to fish. Defs.' L.R. 56(a)1 ¶ 23; Ex. A at 43. Dr. Ruiz noted the x-ray of the plaintiff's lumbar spine was normal, the plaintiff could sit and stand, and his gait was normal. Ex. D ¶ 14; Ex. A at 43, 93. He advised the plaintiff to avoid fish and directed him to contact his unit manager regarding his request for a new mattress. Ex. A at 43. Dr. Ruiz noted no complaints of foot pain. Defs.' L.R. 56(a)1 ¶ 24.

On November 3, 2016, Dr. Ruiz examined the plaintiff due to his complaints that his shoes did not fit him properly and his request that he be tested for lead poisoning. *Id.* ¶ 26; Ex. A at 38; Ex. D ¶ 16. Dr. Ruiz observed abrasions on the tops of the plaintiff's second and third toes on his left foot. Ex. A at 38; Ex. D ¶ 16. Later that day, Dr. Ruiz submitted a request to the URC for a podiatry consultation due to the abrasions on the tops of the plaintiff's toes on his left foot. Defs.' L.R. 56(a)1 ¶ 27. On November 10, 2016, the URC approved the request. *Id.* ¶ 28

On December 5, 2016, Dr. Berkowitz examined the plaintiff and noted abrasions on both of his feet *Id.* ¶¶ 28-29. When Dr. Berkowitz suggested that the plaintiff's shoes were too small,

the plaintiff advised Dr. Berkowitz that he had always worn a size ten shoe. Ex. A at 103; Pl.'s L.R. 56(a)2 ¶ 30. Dr. Berkowitz measured the plaintiff's feet using a shoe sizer and concluded that the plaintiff's feet were a size twelve. Defs.' L.R. 56(a)1 ¶ 30; Ex. A at 103. Dr. Berkowitz opined that the plaintiff was wearing shoes that were too small for his feet and that if he wore shoes that were the appropriate size, he would not experience any injuries to his toes. Defs.' L.R. 56(a)1 ¶ 33; Ex. A at 103. Dr. Berkowitz did not prescribe orthotic shoes for the plaintiff's feet. Defs.' L.R. 56(a)1 ¶ 31; Ex. A at 103.

On June 22, 2017, the plaintiff injured his left ankle while attempting to catch a basketball in the recreation yard. Pl.'s L.R. 56(a)2 ¶ 35. The nurse who treated the plaintiff after he was brought to the medical unit noted that the plaintiff had complained that he had twisted his left foot playing basketball; the nurse also noted that his left foot was painful and swollen, he was limping, and he was missing the fourth and fifth toes on his left foot. Ex. A at 30-31. The nurse provided the plaintiff with ice, motrin, an ace wrap, and crutches, advised him to elevate his foot and to stop playing basketball because it was a risky sport, and notified Dr. Ruiz. *Id.* at 29-31. A short time later, Dr. Ruiz examined the plaintiff and observed that there was swelling over the outside of his midfoot, prescribed Motrin for pain, an ace bandage, and crutches, and ordered that the plaintiff undergo an x-ray of his left foot. Defs.' L.R. 56(a)1 ¶¶ 36-39.

On June 26, 2017, the plaintiff underwent an x-ray of his left foot. *Id.* ¶ 42. On June 28, 2017, a nurse examined the plaintiff and noted that the plaintiff's left foot was still swollen, he was using crutches, and he had an ace bandage around his left ankle. *Id.* ¶¶ 43-44. Later that day, Dr. Ruiz reviewed the x-ray of the plaintiff's left foot and concluded that the plaintiff had sustained a "Jones fracture" to the base of the fifth metatarsal bone in that foot. *Id.* ¶ 45; Ex. A at

92.  It was unclear from the x-ray when the fracture had occurred.  Ex. A at 92.  That evening,

Dr. Ruiz met with the plaintiff and informed him that his x-ray reflected that he had suffered a

fracture to the base of the fifth metatarsal of his left foot.  Defs.' L.R. 56(a)1 ¶ 45.  Dr. Ruiz

prescribed a new pain medication to be taken for thirty days and a hard, orthopedic boot to be

worn by the plaintiff for six to eight weeks.  *Id.* ¶ 46; Ex. A at 6; Ex. D ¶¶ 28-29.  On July 24,

2017, the plaintiff returned the orthopedic boot and crutches to the medical department.  Defs.'

L.R. 56(a)1 ¶ 48.

On August 29, 2017, pursuant to a decision reached in a state habeas petition filed by the

plaintiff, Dr. Ruiz issued the plaintiff a pass to secure two pairs of outside/community footwear a

year.  *Id.* ¶¶ 50-51, Ex. A at 5.  Dr. Ruiz noted that in the future, a Department of Correction

Americans with Disabilities Act Coordinator would make decisions regarding the provision of

non-medical footwear that might be needed by the plaintiff.  Defs.' L.R. 56(a)1 ¶ 52.

## III.  Discussion

As a preliminary matter, the court notes that in his memorandum in opposition to the

defendants' motion for summary judgment, the plaintiff makes reference to a claim under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and a claim under the

Rehabilitation Act ("RA"), 29 U.S.C. § 794.  *See* Mem. Opp'n Mot. Summ. J., ECF No. 24, at 7.

The plaintiff did not assert either an ADA or an RA claim in the complaint.  Nor has the plaintiff

ever attempted to amend his complaint to add these new claims.

A plaintiff cannot amend his complaint in a memorandum in opposition to a motion for

summary judgment.  *See Lyman v. CSX Transportation Inc.*, 364 F. App'x 699, 701 (2d Cir.

2010) (affirming district court's determination that it should not consider claims raised for the

first time in opposition to summary judgment (citations omitted); *Auguste v. Dep't of Corrections*, 424 F. Supp. 2d 363, 368 (D. Conn. 2006) (generally, a plaintiff "cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment"). Thus, the court considers only the Eighth Amendment claims of deliberate indifference to medical needs against Drs. Ruiz and Berkowitz as asserted in the complaint and described in the initial review order.

The defendants raise two arguments in support of their motion for summary judgment. They contend that they were not deliberately indifferent to the plaintiff's medical needs and that they are entitled to qualified immunity.

### A.  Deliberate Indifference – Eighth Amendment

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is an objective and a subjective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Objectively, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted). A medical condition may not initially be serious, but may become serious because it is degenerative, and if left untreated or neglected for a long period of time, will

"result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison*, 219 F.3d at 136 (citations omitted). The Second Circuit has identified several factors that are relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

The plaintiff must also show that, subjectively, the defendant prison official "act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk. *See Salahuddin*, 467 F.3d at 279-80. The fact that a prison official did not alleviate a significant risk that he should have perceived but did not perceive does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 838. "[M]ere negligence is not actionable, nor is mere medical malpractice tantamount to deliberate indifference." *Youmans v. City of New York*, 14 F. Supp. 3d 357, 364 (S.D.N.Y. 2014) (internal quotation marks and alterations omitted).

### 1. Dr. Berkowitz

The plaintiff claims that in December 2016, Dr. Berkowitz was deliberately indifferent to the pain in his left foot when he neglected to prescribe him orthopedic shoes or inserts. He suggests that Dr. Berkowitz's decision not to prescribe orthotic footwear was based on a desire to save money.

Dr. Berkowitz does not address the objective prong of the Eighth Amendment standard

and does not contest the fact that the plaintiff's medical condition during the period in question was serious. Rather, he contends that the medical evidence reflects that he was not deliberately indifferent to the plaintiff's serious need.

In support of the motion for summary judgment, Dr. Berkowitz declares that during the appointment with the plaintiff on December 5, 2016, he observed abrasions to the great toe of the plaintiff's right foot and the second toe of the plaintiff's left foot and that the plaintiff had no fourth or fifth toe on his left foot. Ex. C ¶ 24. Neither abrasion was infected and no hammer toe deformity was present. *Id.* Dr. Berkowitz concluded that the abrasions on the plaintiff's toes had been caused by the plaintiff not wearing the correct size shoes. *Id.* ¶ 25. When the plaintiff commented that he had always worn a size ten shoe, Dr. Berkowitz took out a shoe sizer and measured the plaintiff's feet. *Id.* ¶ 26. Dr. Berkowitz's measurement reflected that the plaintiff's feet were a size twelve. *Id.* It was his opinion that the plaintiff would not suffer abrasions to his toes if he wore the correct size shoes and recommended that the plaintiff obtain the correct size shoes. *Id.* ¶ 27. Dr. Berkowitz concluded that there was no medical necessity to prescribe the plaintiff orthotic footwear. *Id.* ¶¶ 28-29.

The plaintiff contends that this opinion was incorrect because Dr. Berkowitz had prescribed orthotic shoes for him in 2008. The plaintiff's medical records reflect, however, that in December 2008, Dr. Berkowitz prescribed orthotic shoes for the plaintiff in order to alleviate the plaintiff's pain and corns from a hammer toe deformity on his left foot. Ex. B at 20. When the orthotic shoes proved to be ineffective in alleviating the plaintiff's symptoms, Dr. Berkowitz sought approval to perform corrective surgery on the plaintiff's hammer toe. *Id.* at 120. In February 2010, Dr. Berkowitz performed the hammer toe corrective surgery. *Id.* at 111-14.

Thus, after the surgery, the initial basis for prescribing the orthotic footwear, to alleviate pain and corns from the plaintiff's hammer toe, was no longer present. Although later in 2010, a podiatrist submitted a request that the plaintiff be provided with new Nike sneakers to accommodate his foot deformity, the URC did not approve the request because it did not understand the medical need for Nike sneakers. *Id.* at 108. The plaintiff's medical records reflect that on December 9, 2010, a medical provider informed the plaintiff that URC had denied the request for Nike sneakers and instructed the plaintiff to buy sneakers from the commissary. *Id.* at 55.

No other physician, including Dr Febus, who is a podiatrist and who examined the plaintiff in 2011 and 2012, has found it medically necessary to prescribe orthotic foot wear for the plaintiff's left foot condition. *Id.* at 116-17; Ex. A at 101. Nor has the plaintiff submitted any medical or other evidence to support his conclusion that the condition of his left foot requires an orthotic shoe.

The fact that the plaintiff disagrees with Dr. Berkowitz's conclusion that the abrasions on his toes did not require medical treatment in the form of orthotic footwear and could be treated by wearing a shoe that fit his foot correctly does not state a claim of deliberate indifference on the part of Dr. Berkowitz. It is well-established that an inmate does not have a right to the medical treatment of his or her choice. *See Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") (citation omitted); *Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.") In addition, a difference of opinion

11

between an inmate and medical professional does not constitute evidence of deliberate indifference. *See Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 833 (2d Cir. 2013) ("Indeed, we have held that a disagreement with the type of medical care provided is insufficient to state a constitutional claim; 'the essential test is one of medical necessity and not one simply of desirability.'") (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("disagreements over medications, diagnostic techniques[,] ... forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim").

The plaintiff has failed to offer evidence to suggest that there was no medical basis or there was an improper basis for the diagnosis and treatment offered by Dr. Berkowitz after examining him on December 5, 2016. His evidence on this point consists largely of statements in his declaration disagreeing with Dr. Berkowitz's diagnosis that the problem was that his shoes were too small. *See* ECF No. 24-3 at ¶¶ 24-31. The plaintiff's own opinions about proper diagnosis and treatment are not admissible evidence and do not create a genuine dispute of fact. *Fuller v. Lantz*, 549 Fed. Appx. 18, 20 (2d Cir. 2013) (unpublished) (affidavits of inmate and her acquaintances, none of whom were medical professionals, were "insufficient to create a genuine dispute of fact as to the propriety of a medical diagnosis"). Similarly, the plaintiff's asserted dissatisfaction with the treatment simply because it was not the treatment that he had requested is insufficient to suggest deliberate indifference to a serious medical need. *See Daniels v. Murphy*, No. 3:11-CV-00286 SRU, 2014 WL 3547235, at *9 (D. Conn. July 17, 2014) ("The claim that Dr. Wright did not provide Daniels with his requested treatment [an ankle foot orthotic] does not constitute deliberate indifference on the part of Dr. Wright, but rather Daniels' disagreement with

Dr. Wright's diagnosis of the severity of the conditions and treatment of those conditions. Such a claim is not cognizable under the Eighth Amendment."); *Davidson v. Scully*, 155 F. Supp. 2d 77, 84 (S.D.N.Y. 2001) (inmate's allegations that "DOCS did not properly treat him because DOCS denied him particular orthopedic shoes, orthotics, and surgery, which he claims are necessary to treat his podiatric problems" constituted a disagreement about the type of treatment that the inmate believed he should receive and did not rise to the level of an Eighth Amendment claim that DOCS was deliberately indifferent to his podiatric problems); *Sonds,* 151 F. Supp.2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred.") (internal citations omitted).

Construing the evidence, including the plaintiff's declaration, in the light most favorable to him, and drawing all reasonable inferences in his favor, as required on summary judgment, I find that the plaintiff has submitted no evidence suggesting that the evaluation and diagnosis of his foot condition by Dr. Berkowitz during the consultative examination performed on December 5, 2016, "evince[d] a conscious disregard of a substantial risk of serious harm" to the condition of his left foot such that it rose to the level of "culpable recklessness." *Hathaway,* 99 F.3d at 553. Because the plaintiff has not provided evidence to meet the subjective prong of the deliberate indifference standard, the motion for summary judgment is granted on the ground that Dr. Berkowitz was not deliberately indifferent to the plaintiff's painful foot condition when he decided not to prescribe orthotic shoes for the plaintiff in December 2016.

## 2. **Dr. Ruiz**

The plaintiff asserts two separate claims of deliberate indifference to medical needs against Dr. Ruiz. He first claims that from July to November 2016, Dr. Ruiz failed to provide him with any treatment for his disfigured and painful left foot. The plaintiff's second claim arises from Dr. Ruiz's treatment of an injury he sustained to his left ankle in the recreation yard on June 22, 2017.

Dr. Ruiz does not address the objective prong of the Eighth Amendment standard and does not contest the fact that the plaintiff's medical conditions during the time periods in question were serious. Rather, he contends that the medical evidence reflects that he was not deliberately indifferent to the plaintiff's serious needs.

### a.     Treatment from July 2016 to November 2016

In opposition to the motion for summary judgment, the plaintiff declares that on July 1, 2016, he informed Dr. Ruiz that his foot was painful and that the pain was caused because his footwear was inadequate. ECF No. 24-3 ¶ 16. The plaintiff asked Dr. Ruiz to refer him to a foot specialist or to prescribe him orthotic shoes or inserts to fit his left foot. *Id.* ¶ 19. The plaintiff declares that Dr. Ruiz did not prescribe him any pain medication to treat his pain and discomfort or provide any meaningful relief for his disfigured and painful left foot. *Id.* ¶¶ 18, 20.

Dr. Ruiz argues that the plaintiff's medical records contradict the plaintiff's allegations that on July 1, 2016, he failed to provide any treatment in response to the medical condition affecting the plaintiff's left foot. The medical records submitted by the defendants reflect that on July 1, 2016, Dr Ruiz examined the plaintiff due to his complaints of pain in his lower back. Ex. A at 47. Dr. Ruiz ordered an x-ray of the plaintiff's lumbar spine and prescribed pain medication and a bottom bunk pass for a year. *Id.* Dr. Ruiz also noted that the plaintiff suffered from foot

14

callouses. *Id.* In response to this observation, Dr. Ruiz recommended that the plaintiff tie his shoes correctly. *Id.* In his declaration, Dr. Ruiz states that during his examination of the plaintiff on July 1, 2016, it appeared that the cause of his foot callouses was the fact that the plaintiff's shoes were not properly or securely tied. Ex. D ¶ 8. Thus, he instructed the plaintiff to tie his shoes correctly and to avoid playing sports in order to prevent the development of further callouses. *Id.* In addition, Dr. Ruiz explained that he had prescribed Neurontin not only to treat the plaintiff's back pain, but also to treat the plaintiff's foot pain because a patient who has lost a toe or finger may suffer from a sensation of pain called phantom pain in the area where the toe or finger was amputated. *Id.* ¶¶ 10-11. At that the time of his examination of the plaintiff on July 1, 2016, Dr. Ruiz did not consider the callouses on the plaintiff's feet to warrant custom-fit orthopedic shoes. *Id.* ¶ 12.

On September 1, 2016, Dr. Ruiz examined the plaintiff in response to his complaint of a possible allergy to fish. *Id.* ¶ 13. Dr. Ruiz noted that the x-ray of the plaintiff's spine revealed no abnormalities but that he continued to complain about pain in his back. *Id.* ¶ 14; Ex. A at 93. Dr. Ruiz discontinued the prescription for Neurontin and prescribed Motrin for pain to be taken three times a day for sixty days. Ex. D ¶ 14. In response to the plaintiff's request for a new mattress, Dr. Ruiz recommended that he contact the unit manager. *Id.*

On November 3, 2016, Dr. Ruiz examined the plaintiff and noted that he complained about his footwear not fitting properly and that he requested to be sent to be evaluated by a podiatrist. *Id.* ¶ 15. Dr. Ruiz observed abrasions on both of the plaintiff's feet. *Id.* ¶ 16. Later that day, Dr. Ruiz submitted a request to the URC seeking approval for plaintiff to be seen by a podiatrist. *Id.* As indicated above, Dr. Berkowitz saw the plaintiff on December 5, 2016.

Thus, Dr. Ruiz has submitted specific evidence reflecting that he did acknowledge the plaintiff's complaints of callouses on his feet during the July 1, 2016 visit and made recommendations to prevent further callouses. Dr. Ruiz also prescribed medication to treat the plaintiff's painful back and foot conditions, and the medical records confirm this. Ex. A at 47.[3] Furthermore, on September 1, 2016, Dr. Ruiz prescribed a new pain medication to be taken for sixty days, which the plaintiff does not even attempt to rebut in his declaration. Dr. Ruiz's declaration shows that he evaluated each of the plaintiff's complaints on July 1, 2016, prescribed several conservative steps for treatment, and determined in his medical judgment that more specialized treatment was not necessary at that time. Ex. D. ¶ 12 ("It did not appear that there was a medical need for custom fit orthopedic shoes for Mr. Morales-Rojas at any time during my evaluation and treatment of him on July 1, 2016.").

The fact that the plaintiff believed that he should have been referred to a podiatrist, without more, constitutes a difference of opinion about treatment rather than deliberate indifference to a serious medical condition. Such a disagreement does not rise to the level of deliberate indifference to a medical need. *See Chance,* 143 F.3d at 703 (It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim.") (citation omitted); *Valdes v. Fischer*, No. 08-CV-

---

[3] This specific evidence is apparently disputed by the plaintiff, who avers that, "[t]he defendant Ruiz did not prescribe the Plaintiff any pain medication for the severe pain and discomfort." ECF No. 24-3 at 4. Even crediting that vague statement – which is not tied to a particular date but appears to relate to July 1 – I find that it is insufficient to create a dispute of material fact in light of the ample, unrebutted evidence that Dr. Ruiz provided ongoing treatment to the plaintiff, including arranging for a new pain medication in September 2016. In other words, even if Dr. Ruiz prescribed no pain medication on July 1, 2016, no reasonable juror could

749 (LEK/DRH), 2010 WL 5638611, at *7 (N.D.N.Y. Dec. 7, 2010) ("Any complaints Valdes had about the whether he should be referred to a specialist or receive additional x-rays of his mouth constitute no more than a disagreement in his treatment. Such disagreements, without more, are insufficient to state an Eighth Amendment violation.") (citation omitted), *report and recommendation adopted*, No. 9:08-CV-0749 (LEK/DHR), 2011 WL 239808 (N.D.N.Y. Jan. 24, 2011); *Adams v. Perez,* No. 08 Civ. 4834(BSJ), 2009 WL 513036, at *4 (S.D.N.Y. Feb. 27, 2009) (holding that plaintiff's claim that physician was deliberately indifferent to the constant pain in her hip and back by refusing to order an MRI or refer her to a pain specialist "constitute[d] a disagreement regarding course of treatment . . . that is not actionable under the Eighth Amendment") (collecting cases); *Ferrera v. Fisher,* No. 06CIV1158LTSGWG, 2008 WL 4443920, at *14 (S.D.N.Y. Sept. 30, 2008) ("absent a showing that the Medical Defendants were reckless in disregarding a risk to Plaintiff's health, Plaintiff's complaints that he has not received the exact tests, referrals and treatments that he wanted, at the desired time, are insufficient to raise a triable question of fact as to whether the medical defendants were deliberately indifferent to serious medical needs.")

To the extent that the plaintiff alleges that the pain medication prescribed by Dr. Ruiz on July 1, 2016 or on September 1, 2016 was not effective in alleviating his foot pain, he has presented no evidence that he made this fact known to Dr. Ruiz or any other medical provider at Cheshire during the period from July 1, 2016 to November 2, 2016. The plaintiff acknowledges that on November 3, 2016, after observing the abrasions on his toes, Dr. Ruiz submitted a request to the URC to approve a referral to a podiatrist. In opposition to the motion for summary

---

find that that circumstance alone amounted to deliberate indifference on this record.

judgment, the plaintiff declares that at some point between his July 1, 2016 and November 3, 2016 appointments with Dr. Riuz, he sent an informal request to the medical department complaining about severe pain in his left foot.  ECF No. 24-3 ¶ 21.  The plaintiff has not, however, submitted a copy of this request to the court or any other document that might support his allegation regarding the submission of this request. Nor has he produced any evidence that any defendant was aware of this request. Furthermore, a review of the medical records submitted by the defendants reflects no copies of any requests for treatment or references to complaints of pain made by the plaintiff between July 1, 2106 and November 3, 2016.  Absent any evidence of complaints of pain or complaints about the ineffectiveness of the pain medication that had been previously prescribed, the plaintiff cannot state a plausible claim that Dr. Ruiz was deliberately indifferent to his painful foot condition.

Construing the evidence in the light most favorable to the plaintiff, and drawing all reasonable inferences in his favor, as required on summary judgment, I find that the plaintiff has not raised a genuine issue of material fact about whether the treatment by Dr. Ruiz from July 2016 to November 2016 constituted  "a conscious disregard of a substantial risk of serious harm" to the condition of his left foot such that it rose to the level of "culpable recklessness." *Hathaway*, 99 F.3d at 553.   Thus, the plaintiff has not met the subjective prong of the Eighth Amendment standard.  Accordingly, the motion for summary judgment is granted on the ground that Dr. Ruiz did not exhibit deliberate indifference to the plaintiff's foot condition from July 2016 to November 2016.

### b.        Treatment for Ankle Injury from June to August 2017

The plaintiff alleged in the complaint that on June 22, 2017, he injured his ankle during

recreation.  Compl. at 7-8 ¶ 39.  He claimed that the injury was the result of his wearing shoes that did not fit properly.  *Id.*  In his Local Rule 56(a)2 Statement, however, the plaintiff states that he twisted his ankle when he stepped in a pothole in the recreation yard as he attempted to catch a basketball.  Pl.'s L.R. 56(a)2 ¶ 35.  The plaintiff contends that he fractured a bone in his foot when he twisted his ankle and that Dr. Ruiz failed to adequately treat the fracture to ensure that it would heal properly.  Compl. at 9-11 ¶¶ 48-55.  As a result of Dr. Ruiz's negligence in treating the fracture, the plaintiff experienced pain and difficulty walking.  *Id.* at 11 ¶ 57

Dr. Ruiz argues that the plaintiff's medical records belie the claims that he failed to timely or adequately treat the ankle injury suffered by the plaintiff on June 22, 2017. The medical records submitted by the defendants reflect that on the day that the plaintiff twisted his ankle, both a nurse and Dr. Ruiz examined him. Ex. A at 29-31, 35.  The nurse noted swelling to the left lateral anterior part of his left foot and that he was limping on his left foot. *Id.* at 31.  The nurse recommended that he elevate his left leg and apply ice to the swollen area and provided him with crutches, medication for pain, an ace bandage, and a bottom bunk pass. *Id.* at 29, 31.  Dr. Ruiz examined the plaintiff later that day and noted swelling over the lateral portion of the mid-point of plaintiff's left foot. *Id.* at 35.  He prescribed Motrin to be taken three times a day for pain, crutches, a bottom bunk pass for one year, and ordered that the plaintiff undergo an x-ray of his left foot.  *Id.* at 7, 29, 35; Ex. D ¶¶ 20-22.  Dr. Ruiz, in his professional opinion, did not think it was necessary to transfer the plaintiff to an outside medical provider for an x-ray or treatment. Ex. D ¶ 24.

On July 26, 2017, the plaintiff underwent an x-ray of his left foot. Ex. A at 92.  On July 28, 2016, a nurse examined the plaintiff due to his complaints of pain and his request to review

the results of his x-ray. *Id.* at 27-28. The nurse noted some swelling and discoloration in the plaintiff's ankle and contacted Dr. Ruiz. Later that day, Dr. Ruiz met with the plaintiff and explained that he had sustained a fracture to the base of the fifth metatarsal bone also known as a Jones fracture. *Id.* at 29; Ex. D ¶ 28. Dr. Ruiz recommended that the plaintiff wear a hard, orthopedic boot on his left foot for six to eight weeks and also prescribed a new medication to treat the plaintiff's pain to be taken twice a day for thirty days. Ex. A at 6; Ex. D ¶ 29. The plaintiff used crutches and the boot for approximately a month and then returned both to the medical department. Ex. A at 26; Ex. D ¶ 31.

The plaintiff has not offered any evidence to contradict these facts with regard to the treatment provided to him by Dr. Ruiz and the nurses at Cheshire after his ankle injury. To the extent that the plaintiff claims that the delay in undergoing an x-ray and receiving the results of the x-ray constituted deliberate indifference, the claim does not rise to the level of an Eighth Amendment violation. *See Jimenez v. Sommer*, No. 14-CV-5166 (NSR), 2017 WL 3268859, at *6 (S.D.N.Y. July 28, 2017) (allegation that after inmate's fall, a nurse examined inmate and provided him with pain medication, crutches and an air cast and that five days later he underwent an x-ray of his ankle revealing a fracture did not state claim of deliberate indifference to a serious medical need) ; *Patterson v. Westchester County*, No. 13 Civ. 0194 (PAC)(AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) (ankle injury from basketball game not objectively serious enough and "the several-day delay in taking and reporting the results of an x-ray that revealed torn ankle ligaments does not constitute a sufficiently serious treatment delay"), *report and recommendation adopted*, 2014 WL 2759072 (S.D. N.Y. June 16, 2014); *Small v. Clements*, No. 3:18-CV-1731 (KAD), 2018 WL 5634942, at *3–4 (D. Conn. Oct. 31, 2018) ("The decisions

not to arrange for an immediate x-ray or prescribe a stronger pain medication than Motrin during th[e] week [inmate waited to be x-rayed], demonstrate, at most, a disagreement over treatment which is not cognizable under section 1983."); *Miles v. Cty. of Broome*, No. 3:04-CV-1147, 2006 WL 561247, at *9 (N.D.N.Y. Mar. 6, 2006) (concluding delay of seventeen days "in the provision of X-Rays or immobilization" of inmate's wrists did not "constitute[] deliberate indifference to a serious medical need").

In support of the motion for summary judgment, Dr. Ruiz declares that when he learned of the results of the x-ray of the plaintiff's left foot and ankle, he determined that an orthotic boot was the best course of treatment for the plaintiff's fracture because the boot consisted of a hard platform base that would permit the fracture to heal without the possibility of injuring the plaintiff's foot further. Ex. D ¶¶ 28-29. In addition, he opined that splinting and surgery were not appropriate options given that the plaintiff had no fourth or fifth toe to which any splint or other hardware could be attached. *Id.* ¶ 30.

The plaintiff has submitted no evidence to demonstrate that Dr. Ruiz's determination regarding the type of fracture that he had sustained or Dr. Ruiz's decision regarding the method of medical treatment to be employed in response to the fracture was not based on sound medical judgment. *See Reyes v. Gardener*, 93 F. App'x. 283, 285 (2d Cir. 2004) ("[Plaintiff] has offered no evidence ... showing that the prescribed medication regimen deviated from reasonable medical practice for the treatment of his condition."); *Pelletier v. Armstrong*, No. CIV 399CV1559 HBF, 2007 WL 685181, at *12 (D. Conn. Mar. 2, 2007) (concluding that inmate had "failed to meet his burden of providing evidence to show that the medical professionals were not relying on sound medical judgment in determining that he was not a candidate for" specific

type of medical treatment and that claim amounted to nothing more than "a disagreement about appropriate treatment" which was not "cognizable under the Eighth Amendment"). Nor has the plaintiff offered any evidence to support his allegation that the fracture of the bone in his left foot did not heal properly or that Dr. Ruiz did not respond to his complaints of pain made during the two-month period between the date of the fracture and the filing of this action.

The plaintiff contends that Dr. Ruiz is not an orthopedist or a podiatrist and should have consulted with a podiatrist or orthopedist before deciding to pursue the immobilization method using a boot to treat the fracture in his left foot. Compl. at ¶¶ 50-52. The plaintiff characterizes Dr. Ruiz's conduct as negligent.

Negligence that would support a claim for medical malpractice, however, does not rise to the level of deliberate indifference and is not a cognizable claim under section 1983. *See Salahuddin*, 467 F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (observing that showing of medical malpractice is insufficient, on its own, to establish deliberate indifference).

The medical records do not support a claim of complete denial of medical treatment for the plaintiff's foot fracture. Rather, the medical records and Dr. Ruiz's declaration demonstrate that medical staff members at Cheshire, including Dr. Ruiz, provided attentive care in response to the injury to the plaintiff's ankle and foot. The plaintiff has not offered evidence to permit a reasonable jury to conclude that Dr. Ruiz was deliberately indifferent to or "evince[d] a conscious disregard of a substantial risk of serious harm" to the condition of his left foot during the period from June 22, 2017 to August 22, 2017. *Hathaway*, 99 F.3d at 553. Absent disputed

issues of material fact as to whether Dr. Ruiz exhibited deliberate indifference in treating the plaintiff's foot fracture, the plaintiff has not met the subjective prong of the Eighth Amendment standard and Dr. Ruiz is entitled to judgment as a matter of law.

      **B.**      **Qualified Immunity**

The defendants contend that they are entitled to qualified immunity because they acted with objective reasonableness in response to the plaintiff's medical conditions. Because the court has granted summary judgment on the ground stated above, it need not reach the defendants' qualified immunity argument.

## IV.   Conclusion

Defendants' Motion for Summary Judgment, [**ECF No. 16**] is **GRANTED**. The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Hartford, Connecticut this 4th day of March, 2019.

                        /s/ MICHAEL P. SHEA\_\_\_\_\_
                        Michael P. Shea
                        United States District Judge